**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JACOBO LOPEZ OJEDA,

Plaintiff,

v. No. 2:26-cv-1596 KG/DLM

TODD BLANCHE, *Acting Attorney General of the United States, et al.*,

Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Petitioner Jacobo Lopez Ojeda's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Petitioner brings claims of unlawful prolonged detention without a bond hearing and asserts violations of the Immigration and Nationality Act (INA) and the Due Process Clause of the Fifth Amendment. He also asserts claims challenging his detention based on unlawful arrest and seizure, excessive force and conditions of confinement, retaliatory transfers, and claims that his previous petition for writ of habeas corpus, which was denied in accordance with Fifth Circuit precedent, does not control the present petition. In addition, Petitioner filed an Application to Proceed In Forma Pauperis (Doc. 2), a Motion for Temporary Restraining Order (TRO) to prevent further transfer (Doc. 3), and a Motion for Release (Doc. 10). Having reviewed the record and relevant law, the undersigned recommends that the Petition be **GRANTED IN PART** on statutory grounds, that the Application to Proceed In Forma Pauperis be **GRANTED**, and that the Motion for Temporary Restraining Order and Motion for Release be **DENIED AS MOOT**.[1]

[1] On June 4, 2026, Chief United States District Judge Kenneth J. Gonzales entered an Order of Reference referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 8.)

## I. Factual and Procedural Background

Petitioner Jacobo Lopez Ojeda is a citizen and national of Mexico. (Docs. 1-1 at 6; 7-1 at 3.) He entered the United States without inspection in or around February 2005 and has lived continuously in the United States since his entry.[2] (*See* Docs. 1 at 2; 7 at 1 (citing Doc. 7-1).) The Department of Homeland Security (DHS) records reflect some criminal history for Petitioner. DHS's Form I-213 notes a 2008 conviction for driving without a license, for which Petitioner received a 90-day sentence. (Doc. 7-1 at 5.) The record also reflects two arrests in 2016: (1) domestic-violence assault and rape in the third degree, and (2) assault in the second degree. (*See id.*) The domestic-violence charges were dismissed in 2018, and DHS reports that no charges were filed on the latter arrest. (*Id.*) Petitioner asserts that he has "no pending criminal charges" and "no criminal convictions." (*See* Docs. 9 at 5; 10 at 2.)

On September 30, 2025, Immigration and Customs Enforcement (ICE) and Enforcement and Removal Operations (ERO) agents encountered Petitioner in Bellingham, Washington, during a targeted enforcement operation after a vehicle-registration query "yielded positive results for immigration violations." (Docs. 1 at 2; 7 at 1–2; 7-1 at 4.) That same day, DHS served Petitioner with a Notice to Appear charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen "present in the United States without being admitted or paroled . . . ." (Doc. 7-3 at 30.) Petitioner was then transported to the ICE ERO Ferndale, Washington office. (*See* Doc. 7-1 at 5.)

---

[2] Federal Respondents state that Border Patrol arrested Petitioner on February 25, 2005, for entry without inspection, released him the next day, and granted him a voluntary return. (Docs. 7 at 1; 7-1 at 5.) They further assert that Petitioner subsequently re-entered the United States without inspection or parole. (Doc. 7 at 1.) These assertions appear in an I-213 form, and Respondents cite no additional evidence supporting a departure or subsequent re-entry. Petitioner maintains that he never left the United States. (Doc. 9 at 1–2.) This discrepancy does not affect the analysis below.

On October 20, 2025, following a custody-redetermination hearing, an Immigration Judge (IJ) denied Petitioner's request for bond, found Petitioner subject to mandatory detention under 8 U.S.C. § 1225(b), and in the alternative set bond at $20,000. (*See* Doc. 7-2.)

Petitioner was subsequently transferred to Louisiana and then to the ERO El Paso Camp East Montana facility in El Paso, Texas. (*See* Docs. 1 at 3, 8; 7-3 at 3, 33.) On January 28, 2026, while detained in El Paso, Petitioner filed a habeas petition in the Western District of Texas seeking immediate release or enforcement of the $20,000 bond set by the IJ. (*See* Docs. 7 at 2; 7-3 at 23–24.) On April 1, 2026, United State District Judge Leon Schydlower of the Western District of Texas denied the petition, holding that 8 U.S.C. § 1225(b)(2)(A) governed Petitioner's detention and requiring mandatory detention without bond while removal proceedings were pending. (*See* Doc. 7-4.)

On or about April 10, 2026, Petitioner was transferred to the Otero County Processing Center (OCPC) in Chaparral, New Mexico. (Docs. 1 at 2; 7 at 2.) On May 18, 2026, Petitioner filed the present habeas petition under 28 U.S.C. § 2241. (Doc. 1.) In that filing, Petitioner seeks immediate release, a constitutionally adequate bond hearing at which the Government bears the burden of proof, supervised release under reasonable conditions, or reinstatement of the previously set $20,000 bond. (*See id.* at 8–9.) Petitioner also filed an Application to Proceed In Forma Pauperis and an Emergency Motion for Temporary Restraining Order seeking to prevent transfer outside the District. (Docs. 2–3.)

The Government filed its response on May 26, 2026, asserting collateral estoppel based on the Western District of Texas's prior habeas decision and arguing that Petitioner was properly detained under § 1225(b)(2)(A).[3] (Doc. 7.) Petitioner filed his Reply on June 15, 2026. (Doc. 9.)

---

[3] Warden Respondents did not file a separate response. This is consistent with the standard practice in these § 2241 immigration-detention cases, where wardens of private detention facilities either expressly join the federal

On July 6, 2026, Petitioner filed a Motion for Release. (Doc. 10.) On August 7, 2026, the Government filed a Notice of Supplemental Authority withdrawing its collateral estoppel argument and acknowledging that newly issued, binding Tenth Circuit authority controls the statutory-classification question. (Doc. 11.)

The matter is fully briefed and ready for disposition.

## II. Legal Standard

Federal courts possess longstanding authority to review the legality of executive detention through the writ of habeas corpus. Section 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

The fundamental purpose of a § 2241 habeas corpus proceeding is to allow a detainee to challenge the legality of his custody and to secure release from unlawful detention. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (quotation omitted). Because Petitioner challenges the legality of his continued detention, his claim falls squarely within the scope of § 2241.

No party has identified any factual dispute requiring an evidentiary hearing, and the issues presented are purely legal and fully briefed. As such, the existing record is sufficient to resolve the habeas petition.

---

Respondents' arguments or do not appear at all. Courts in this District have treated the federal Respondents' position as applying equally to the warden in such circumstances. *See Duhan v. Noem*, No. 2:26-cv-0019 MIS/JFR, 2026 WL 266619, at *1 n.2 (D.N.M. Feb. 2, 2026) (citations omitted).

## III. Discussion

Petitioner argues that his continued detention is unlawful because Respondents have detained him for more than eight months without providing a bond hearing in violation of the Due Process Clause. (Doc. 1 at 6.) He also raises claims relating to unlawful arrest, excessive force, conditions of confinement, and retaliatory transfers. (*Id.* at 6–8.)

Respondents initially argued that collateral estoppel barred Petitioner's statutory classification challenge and that he was properly detained under 8 U.S.C. § 1225(b)(2)(A). (*See* Doc. 7 at 2–3.) After briefing closed, Respondents withdrew their collateral-estoppel argument and acknowledged that newly issued, binding Tenth Circuit authority controls the statutory-classification question. (*See* Doc. 11 (citing *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1251 n.13 (10th Cir. 2026)).) Respondents now concede that 8 U.S.C. § 1226 governs Petitioner's detention and invite resolution on that basis. (*Id.* at 1–2.)

For the reasons explained below, the undersigned concludes that § 1226 governs Petitioner's custody and that Petitioner is entitled to a bond hearing or release.

### A. Petitioner's detention is governed by § 1226(a).

The detention of noncitizens prior to a final order of removal is governed by 8 U.S.C. §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 287–89 (2018). The statutory question here is whether Petitioner—who entered the United States in 2005 and lived openly in the interior since entry—is properly detained under § 1225(b)(2)(A), a provision that applies only to noncitizens "seeking admission," or under § 1226(a), which governs the detention of noncitizens already present in the United States and authorizes release on bond. *See id.* at 297, 303.

Although Respondents now concede that § 1226(a) governs Petitioner's detention, the Court briefly addresses the statutory classification question because it is dispositive and independently compelled by binding Tenth Circuit authority.

The Tenth Circuit's decision in *Santillan Quiroz v. Mullin* provides authority for the undersigned's conclusion. There, the court held that "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Santillan Quiroz*, 180 F.4th at 1237. The court explained that § 1225(b)(2)(A) applies only to noncitizens "seeking admission," which requires a present and continuing action to request lawful entry into the United States. *Id.* at 1238–39. Individuals who entered unlawfully and have lived in the interior "are categorically unable to seek admission while they remain in the country[,]" because "[a] person cannot make a present request for permission to enter the United States . . . once he or she has already entered." *Id.* at 1239. Individuals arrested in the interior who have taken no affirmative steps to request lawful entry therefore cannot be "seeking admission" within the meaning of the statute. *Id.* at 1237–38. Petitioner fits squarely within this category: he entered without inspection, lived in the interior for nearly 20 years, and was arrested in Bellingham, Washington—not at a port of entry. (*See* Docs. 1 at 1–2; 7-1 at 4.)

The District of New Mexico has repeatedly applied *Santillan Quiroz* to materially identical cases. In *Morocho Pilataxi v. Mullin*, the court held that a noncitizen who entered without inspection, lived in the United States for years, and was arrested in the interior was detained under § 1226(a), not § 1225(b)(2)(A). *See Morocho Pilataxi v. Mullin*, No. 2:26-cv-2237 KG/DLM, 2026 WL 2255171, at *1–2 (D.N.M. Aug. 5, 2026). The court emphasized that § 1225(b)(2)(A) applies only to noncitizens "seeking admission" and that long-term interior residents who have taken no affirmative steps to request lawful entry cannot be "seeking admission." *See id.* at *1–2. Likewise,

in *Argueta v. Blanche*, the court held that § 1226(a) governed the detention of a noncitizen who entered without inspection and was arrested in Odessa, Texas, explaining that interior arrests fall squarely within § 1226(a)'s default detention framework. *Argueta v. Blanche*, No. 2:26-cv-1911 KG/GJF, 2026 WL 1970603, at *1–2 (D.N.M. July 78, 2026). Petitioner's circumstances mirror those in *Morocho Pilataxi* and *Argueta*: he entered without inspection, lived in the United States for nearly two decades, was arrested in the interior, and made no affirmative request for admission. As in those cases, DHS's reliance on § 1225(b)(2)(A) is inconsistent with the statutory text, and § 1226(a) governs his detention.

The record further confirms this conclusion. DHS's Form I-213 states that Petitioner's "Date, Place, Time, and Manner of Last Entry" are "Unknown." (Doc. 7-1 at 3.) DHS's form also notes that Petitioner re-entered the United States "on an unknown date and location without inspection . . . ." (*Id.* at 5.) These facts foreclose any argument that Petitioner was encountered at the border or was engaged in any present, ongoing request for lawful entry. Because DHS cannot identify when Petitioner entered, where he entered, how he entered, or that he ever asked to be admitted, DHS cannot classify him as an arriving alien or as someone "seeking admission." *See Santillan Quiroz*, 180 F.4th at 1238–39 ("[A] noncitizen is 'seeking admission' when he takes some kind of ongoing action to request lawful entry into the United States . . . . A person cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered."). The record thus confirms that Petitioner was arrested in the interior and is detained under § 1226(a).

Accordingly, the undersigned concludes that § 1226(a) governs Petitioner's detention, not § 1225(b)(2)(A).

**B. Petitioner is entitled to a bond hearing or immediate release.**

Having concluded that § 1226(a) governs Petitioner's detention, the Court must determine the appropriate remedy. "Federal courts are authorized under [28 U.S.C.] § 2243 to 'dispose of [a habeas petition] as law and justice require' and thus possess broad discretion to fashion appropriate relief." *Hernandez v. Mullin*, No. 2:26-cv-1213 KG/KK, 2026 WL 2070000, at *2 (D.N.M. July 17, 2026) (citing *Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (noting that a federal court "possesses power to grant any form of relief necessary to satisfy the requirement of justice")).

The Tenth Circuit has already articulated the remedy for unlawful detention under § 1226(a). In *Santillan Quiroz v. Mullin*, the court directed that "the district court shall order the Government to, within seven days of such order, either provide [the Petitioner] with a bond hearing or else release him." *Santillan Quiroz*, 180 F.4th at 1251 n.13 (citations omitted). District courts within this Circuit have uniformly applied that instruction. *See, e.g.*, *Morocho Pilataxi v. Mullin*, 2026 WL 2255171, at *2 (ordering bond hearing or release within seven business days); *Yusif v. Mullin*, No. 1:26-cv-1695 KG/SCY, 2026 WL 2299539, at *2 (D.N.M. Aug. 10, 2026) (same); *Argueta v. Blanche*, 2026 WL 1970603, at *2 (ordering immediate release where DHS offered no lawful basis for continued detention).

Here, an IJ has already issued a custody order. On October 20, 2025, that IJ found "no jurisdiction" under § 1225(b) but in the alternative set bond at $20,000. (*See* Docs. 1-1 at 1–2; 7-2.) Because § 1226(a) governs Petitioner's detention, the IJ's jurisdictional determination was erroneous, and the alternative bond order was issued under the wrong statutory framework. The undersigned therefore recommends that the Court order a new bond hearing under § 1226(a)'s correct standard. If DHS does not provide such a hearing within seven days, the undersigned recommends that the Court order Petitioner's release.

**C. The disposition of Petitioner's remaining claims and motions.**

Respondents acknowledge that the Court may resolve the petition solely on statutory grounds and need not reach Petitioner's additional constitutional claims. (*See* Doc. 11.) Because the undersigned recommends granting relief under § 1226(a), it is not necessary to address Petitioner's remaining claims concerning unlawful arrest, excessive force, conditions of confinement, or retaliatory transfers. Granting relief on statutory grounds fully remedies the unlawful detention, and Petitioner's remaining claims should therefore be dismissed as moot. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004).

Petitioner also filed a Motion for Temporary Restraining Order seeking to prohibit Respondents from transferring him outside the District of New Mexico while this habeas petition was pending. (*See* Doc. 3 at 1.) Because the recommended disposition grants Petitioner the statutory relief he seeks and resolves the habeas petition in full, there will be no pending proceeding in which a transfer could interfere with adjudication. Accordingly, the Motion for Temporary Restraining Order should be denied as moot.

Petitioner's Motion for Release likewise seeks the same ultimate relief afforded by the recommended disposition of the habeas petition—release from custody, whether through immediate release, release under conditions, or release pursuant to a bond determination. (*See* Doc. 10 at 4.) Because the recommended habeas relief provides the remedy Petitioner seeks, the Motion for Release should also be denied as moot.

Finally, Petitioner filed an Application to Proceed In Forma Pauperis. (Doc. 2.) In the application, Petitioner attests that he is detained with no income, receives no government benefits, possesses no accessible assets, and cannot operate his prior small business while detained. (*See id.* at 1–3.) Because Petitioner's sworn affidavit establishes that he lacks the resources to pay a filing

fee, the undersigned recommends that the Application to Proceed In Forma Pauperis be **GRANTED**.

**IV. Conclusion**

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. The Petition for Writ of Habeas Corpus (Doc. 1) should be **GRANTED IN PART** as to Petitioner's statutory classification claim under § 1226(a).
2. The Court should **ORDER** Respondents to provide Petitioner with an individualized bond hearing before a neutral Immigration Judge within seven days of the Court's order, and to file a status report within ten days confirming that the hearing has occurred or that Petitioner has been released.
3. If no bond hearing is held within seven days, the Court should **ORDER** Petitioner's immediate release unless and until the Government demonstrates that continued detention is lawful under 8 U.S.C. § 1226(a).
4. Because the undersigned recommends the Court grant relief on statutory grounds, Petitioner's remaining claims should be dismissed as moot.
5. Petitioner's Application to Proceed In Forma Pauperis (Doc. 2) should be **GRANTED**. Petitioner's Emergency Motion for Temporary Restraining Order (Doc. 3) and Motion for Release (Doc. 10) should be **DENIED AS MOOT** in light of the relief recommended herein.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any**

**objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE